UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America    :
                            :
         v.                 :       File No. 1:98-CR-25
                            :
Edward Finley               :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 138, 148, 157 and 162)

Edward Finley, proceeding *pro se*, has filed a motion
to vacate, set aside, or correct his sentence pursuant to
28 U.S.C. § 2255.  Finley was convicted in 1999 of crimes
related to his attempt to rob a credit union.  A key
witness at his trial was co-conspirator Daniel Colomb.
In 2006, during an interview with an investigator from
the Federal Public Defender's Office, Colomb stated that
he had urged Finley to commit the robbery after being
pressured to do so by the FBI.  After Finley's trial, the
FBI allegedly paid Colomb between $1,000 and $1,500 for
his testimony.

Based upon this "newly discovered evidence," Finley
argues that the government violated his rights when it
failed to disclose the FBI's tactics prior to trial.
Finley also argues that his trial attorney was
ineffective for failing to properly investigate the
possibility of government pressure on Colomb.  The

government opposes the § 2255 motion, claiming that it is untimely and without merit.  For the reasons set forth below, I recommend that Finley's motion be DENIED.[1]

<u>Factual Background</u>

The facts of this case were summarized by the Second Circuit as follows:

> The government's case centered on the testimony of Finley's co-conspirator, Daniel Colomb.  He testified that, in late 1997, after he and Finley had participated in several burglaries, Finley suggested that they rob the Vermont Grocer's Credit Union, and they took several preliminary steps to plan the robbery.  In addition, in January 1998, they burglarized a local residence and stole some marijuana.  Soon thereafter, Colomb was arrested on a shoplifting charge and agreed to cooperate with the police; he wore a recording device during several subsequent meetings with Finley.  During one of these meetings, Finley sold two ounces of marijuana to Colomb.  Later, during a series of meetings on March 5, 1998 concerning the robbery, defendant told Colomb he "wanted to do the job" but then changed his mind back and forth several times.  He brought Colomb to the credit union and drove past it three times.  On the final pass, Colomb exited the car wearing a mask and entered the credit union.  As Finley moved the car away, a police officer observed him wearing a hood.  He was arrested and gave a full confession admitting the robbery was his idea.

---

[1]  Also pending before the Court is Finley's motion for default judgment (Paper 157).  Finley claims that the government failed to file its opposition to his motion in a timely manner.  The docket in this case, however, shows that the government's opposition was filed on February 9, 2007 as allowed by the Court's prior order (Paper 153).  I therefore recommend that the motion for default judgment be DENIED.

> Finley testified in his own defense.  He
> claimed, among other things, that the robbery
> was Colomb's idea; that he never agreed to rob
> the credit union; that he was unaware of what
> was going on while the robbery attempt was
> underway and did not expect Colomb to get out of
> the car; and that he was not wearing a hood as
> he pulled away from the credit union.

United States v. Finley, 205 F.3d 1325, 2000 WL 232166,

at *1 (2d Cir. Feb. 18, 2000) (unpublished opinion).  The

jury convicted Finley on two counts related to the credit

union robbery, but acquitted him on a charge of marijuana

distribution.  At sentencing, the Court imposed a two-

level enhancement for obstruction of justice through

perjured testimony, and sentenced Finley to 63 months in

prison to be followed by three years of supervised

release.

   After trial, the defense moved to set aside the

verdict based upon alleged governmental misconduct.  The

defense alleged that Special Agent John Hersh of the FBI

had threatened one non-party witness with criminal

prosecution if he did not testify on behalf of the

government, and threatened Finley's wife with criminal

prosecution if she testified on behalf of her husband.

Notwithstanding Hersh's alleged threats, the non-party

witness did not testify for the government, and Finley's

3

wife testified on Finley's behalf.  This Court denied the motion, and the Second Circuit, noting that Finley's wife "actually testified, and that [the other non-party witness] did not," affirmed on the basis of lack of prejudice.  Id. at *3.

On May 9, 2005, after Finley was arrested on federal charges relating to a cocaine trafficking conspiracy, the government filed a petition to revoke his supervised release.  On June 6, 2006, the Court sentenced Finley to 11 months imprisonment for violating the terms of his supervised release, to be served consecutively to the 84-month sentence imposed in the cocaine trafficking case (File No. 1:05-CR-73-01).

Finley filed the instant § 2255 motion on July 25, 2006.  Attached to his motion is an affidavit from Andrew Bartnick, an investigator with the Federal Public Defender's Office.  On May 24, 2006, Bartnick interviewed Daniel Colomb at Colomb's home in Rutland, Vermont.  In the course of the interview, Colomb allegedly stated that

> [d]uring his career as an informant, Mr. Colomb
> has never had second thoughts about the people
> he made cases against with one exception.  Mr.
> Colomb stated he has never felt comfortable with
> the arrest and conviction of Edward Finley
> because he believes the FBI used excessive force

4

to pressure him into pressuring Finley to
participate in the robbery.

(Paper 138 at 12). Colomb claimed that FBI Agent Hersh
held a personal grudge against Finley. Hersh also
allegedly cited high investigation costs as a reason for
wanting to make an arrest, and threatened to criminally
prosecute Colomb if he did not make "something happen."
"'They spent so much money in trying to get [Finley] that
if something didn't happen I would be charged with
something like what was the word . . . obstruction of
justice . . . I was not going to go for that.'" Id. at
13.

Colomb met with Finley on the morning of the
robbery. In his interview with Bartnick, he reported
that Finley "'wanted no part of it . . . I pushed him
along. He didn't want nothing to do with it . . .
Nothing. I pushed him. Because [Hersh] was pushing
me.'" Id. As they were driving past the credit union,
Colomb exited the car while it was still moving. As
Colomb entered the bank, Finley was arrested. Id.

Colomb told Bartnick that after Finley's trial, he
was paid between $1,000 and $1,500 by Hersh and another
agent for his role in the conviction. Id. at 14. Colomb

5

explained that he had been paid for informant work in the past, and that throughout the Finley case he expected to be paid.  Colomb concluded by telling Barnick that, if called to testify, his testimony would be consistent with his statements in the interview.  Id.

Finley now offers the Colomb interview as newly discovered evidence.  He claims that the government violated Brady v. Maryland, 373 U.S. 83 (1963) when it "failed to disclose the full nature and extent of Colomb's history as a cooperating witness."  Finley also claims that this information would have been admissible and relevant to the jury's assessment of Colomb's credibility.  His final claim is that defense counsel was ineffective "based upon [his] failure to properly investigate with respect to Danny Colomb and the tactics of the government."

Discussion

I.   Legal Standard

To prevail in a habeas corpus motion under § 2255, a defendant must demonstrate (1) that the sentence was imposed in violation of the Constitution or laws of the United States, (2) that the court was without

jurisdiction to impose such sentence, (3) that the
sentence was in excess of the maximum authorized by law,
or (4) that the sentence is otherwise subject to
collateral attack.  28 U.S.C. § 2255.  If an issue is not
raised on direct appeal, a § 2255 motion is procedurally
barred unless it is based on constitutional or
jurisdictional claims or would result in a "complete
miscarriage of justice."  Johnson v. United States, 313
F.3d 815, 817 (2d Cir. 2002).  In addition, a defendant
may not assert a claim in a § 2255 motion that he or she
failed to raise on direct appeal unless the defendant
shows cause for the omission and prejudice resulting
therefrom, or actual innocence.  See Bousley v. United
States, 523 U.S. 614, 622 (1998); Campino v. United
States, 968 F.2d 187, 190-91 (2d Cir. 1992).  One
exception to this rule is that a claim for ineffective
assistance of counsel may be brought regardless of
whether it was raised on direct appeal.  Massaro v.
United States, 538 U.S. 500, 504 (2003).

## II.  Timeliness - Newly Discovered Evidence

The government argues that Finley's motion is
untimely and, in any event, without merit.  The

7

Antiterrorism and Effective Death Penalty Act ("AEDPA")
sets a one-year statute of limitations for § 2255
motions, running from the latest of the following four
events:

>     (1) the date on which the judgment becomes
>     final;
>
>     (2) the date on which the impediment to making a
>     motion created by governmental action in
>     violation of the Constitution or laws of the
>     United States is removed, if the movant was
>     prevented from filing by such governmental
>     action;
>
>     (3) the date on which the right asserted was
>     initially recognized by the Supreme Court, if
>     the right has been newly recognized by the
>     Supreme Court and made retroactively applicable
>     to cases on collateral review; or
>
>     (4) the date on which the facts supporting the
>     claim or claims presented could have been
>     discovered through the exercise of due
>     diligence.

28 U.S.C. § 2255 ¶6.

Here, Finley necessarily relies upon the newly
discovered evidence exception in subsection (4).  Finley
filed his § 2255 motion on July 25, 2006.  In order to
succeed under the exception in subsection (4), Finley
must show that a reasonably diligent person in his
circumstances would have not have discovered the relevant
facts more than one year prior to the filing date.  Wims

8

v. United States, 225 F.3d 186, 190 (2d Cir. 2000).  When evaluating due diligence, external impediments such as the petitioner's confinement must be considered.  Id. at 190-91.

The government notes that Finley did not begin investigating Colomb's trial testimony until seven years after his conviction and sentencing.  "Indeed," the government argues, "defendant only looked into his prior conviction when he realized that he was about to be assessed five criminal history points in the calculation of his sentence on the subsequent drug trafficking conviction."  (Paper 154-1 at 7).  The government also contends that Colomb's statements are not material since they do not establish Finley's innocence.

In fact, Finley himself never inquired into Colomb's testimony.  Rather, Colomb's recent statements were uncovered by an investigator for the Federal Public Defender.  But for the efforts of the investigator, Finley might well have never obtained the statements upon which he now relies in his motion.  Therefore, it is difficult to find that Finley, either on his own or through agents acting on his instructions, proceeded with

due diligence in discovering Colomb's story.

Furthermore, there was evidence presented at trial showing (1) that Colomb had been encouraged by law enforcement to assist Finley in criminal conduct, and (2) that Special Agent Hersh had applied pressure on potential witnesses.  In his trial testimony, Colomb acknowledged that his role in the crime, as well as his role at trial, constituted part of a deal with the prosecution.

COUNSEL: You've come into this courtroom, Mr. Colomb, and it's part of sort of an agreement you made with the prosecution.  Isn't that right?

COLOMB: That's correct.

COUNSEL: You would help the police arrest [Finley]. In exchange for that, you wanted some benefits.

COLOMB: Correct.

(Paper 154-6 at 26 [Trial Tr. at 50]).  It was also revealed at trial that Colomb had been working with Hersh, and that Hersh had allegedly tried to intimidate two other trial witnesses.  (Paper 154-6 at 31); (Paper 154-5 at 2-5).  Given these facts, a reasonable person would have continued to pursue Colomb's motivations for testifying as he did, and likely "could have" discovered "the facts supporting the claim or claims presented."  28

10

U.S.C. § 2255(4).

   While the Court is aware that Finley was incarcerated for several years after his trial, and that investigation of the facts would thus have been difficult, a seven-year delay does not evidence due diligence.  Moreover, as the government properly notes, investigation was only begun when the credit union robbery conviction impacted a later sentencing.  I therefore conclude that Finley did not act with due diligence, that the exception under § 2254(4) does not apply, and recommend that Finley's motion be DENIED as untimely.

II.  *Brady* Claim

   Even assuming, *arguendo*, that Finley's claim was timely, his allegation of a Brady violation is without merit.  Finley claims that the government "failed to disclose the full nature and extent of Colomb's history as a cooperating witness." (Paper 138 at 8).  The Second Circuit has held that "the Government's failure to disclose evidence that is materially favorable to the defense violates due process."  United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004) (citing Brady, 373 U.S.

11

at 87).  To violate <u>Brady</u>, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). "Impeachment evidence is evidence 'having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.'" <u>Rivas</u>, 377 F.3d at 199 (quoting <u>United States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1998)).  To be material in the <u>Brady</u> analysis, the non-disclosure of the evidence must create "a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case, <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985)), or would have put the case in such a different light as to undermine confidence in the outcome,  <u>Kyles v. Whitley</u>, 514 U.S. 419, 434-35 (1995)." <u>Rivas</u>, 377 F.3d at 199.

In this case, no prejudice ensued from the government's allegedly flawed pre-trial disclosure.  The government's disclosure stated that Colomb had "received no compensation for assisting police, but may have

12

received money for cigarettes at some point." (Paper 138 at 16). The government also reported that Colomb had a pending charge in state court, that police had requested the state prosecutor to consider Colomb's assistance in the Finley case, and that Colomb ultimately received a reduced state sentence. Id. Finally, the government noted that Colomb had been a prosecution witness in a separate federal case. Id. Finley now claims that the government failed to disclose (1) that Colomb expected payment and was paid by the government for his services, and (2) that Hersh threatened Colomb with criminal prosecution "throughout the course of the operation" and, specifically, on the morning of the robbery. Id. at 8.

The allegations of payments and threats are directly relevant to the credibility of Colomb's trial testimony. However, that credibility was presumably already in question, as the jury was fully aware that Colomb was being prosecuted and had received benefits from the government as a result of his role in the case. Indeed, direct examination immediately revealed that Colomb had received a reduced sentence on a state conviction in exchange for his cooperation. (Trial Tr., Vol. II at

143).

On cross-examination, Finley's attorney aggressively questioned Colomb with respect to both the truthfulness of his testimony and the level of his cooperation with the government.  First, counsel noted discrepancies between Colomb's testimony and Finley's surreptitiously-recorded statements prior to the robbery.  This line of questioning attempted to reveal that, consistent with Finley's own testimony, Finley was not certain that he wanted to take part in the crime.  Id., Vol. III at 25-30.

Finley's attorney next detailed Colomb's extensive drug and criminal history.  Id. at 30-35.  In the course of his questioning, counsel noted discrepancies between Colomb's testimony at trial and his grand jury testimony in a prior case.  These discrepancies were significant, including omissions of past cocaine use, and Colomb's inability to recall an episode wherein he almost died from an overdose.  Id. at 36-41.  As a result of this questioning, Colomb admitted that his drug history had rendered his memory generally poor, and that his memory of conversations with Finley around the time of the

robbery were consequently "vague."

    COUNSEL: And so when you say Ned Finley said
something on a certain date, you're not sure if that's
the correct date or not.

    COLOMB: Correct.

    . . .

    COUNSEL: You can't even be certain that Ned actually
said what you said he said on all occasions?

    COLOMB: What's on the tapes is on the tapes.

    COUNSEL: But other than that, your memory's vague?

    COLOMB: What?

    COUNSEL: Other than that, your memory's vague?

    COLOMB: Yes, it is.

Id. at 41-42.

    Counsel further questioned Colomb about the
truthfulness of statements made to law enforcement.  For
example, in a previous federal case, Colomb had informed
police that the defendant in that case was engaging in
drug-related activity.  Colomb later signed a statement
recanting his statements to police, explaining that he
had wanted the defendant arrested for personal reasons.
When faced with his recantation in the Finley trial,
Colomb insisted that his initial statements to police *had*
been true, but that he felt compelled to lie because he

was, at that time, incarcerated in a jail cell near the man whom he had incriminated. Id. at 61-70. "When I was in jail, I'd say whatever I have to to survive. When you're known as a snitch, you have to do what you have to do to survive, and that's what I did. I signed that piece of paper." Id. at 70.

Other questioning by defense counsel revealed that Colomb had lied to mental health workers about hallucinations, and that he had lied to Finley through the course of their robbery conspiracy. Given this extensive cross-examination, the fact that Colomb stood to earn additional benefits from Finley's conviction – namely, freedom from additional prosecution and a cash payment – would have added little to the jury's knowledge of Colomb's reliability generally.

Moreover, and relevant to the issue of materiality, Colomb's statements to Bartnick were not significantly different from his statements at trial. According to Bartnick, Colomb now claims that Finley did not want to undertake the robbery, and that he (Colomb) "pushed him" because of pressure from the FBI. (Paper 138 at 13). At trial, Colomb testified on cross-examination as follows:

16

COUNSEL: Wasn't it your objective to see to it that Ned agreed to rob that bank?

COLOMB: I can't talk for Ned.

COUNSEL: But that's what you wanted to see happen?

COLOMB: Yes.

COUNSEL: Because without that, you get no benefit and that case is done and over so it doesn't matter. And so you proceeded for the next week to bring the subject up on a number of occasions?

COLOMB: He brought it up, too.

COUNSEL: Did you understand my question?

COLOMB: Yes.

COUNSEL: And essentially, what you said to Ned every time you brought it up was, "Do you want to do this or don't you?"

COLOMB: Yes.

. . .

COUNSEL: And whenever you brought it up and said, "Are we going to do it or not," Ned said, "I don't know. I don't think so.  I'm scared," essentially, is what he was saying to you.  Right?

COLOMB: Yes.

COUNSEL: And, in fact, the very morning that you say this robbery took place Ned came over and you said, "Do you want to do it," and he said, "No."

COLOMB: Correct.

COUNSEL: We know he said no because you called the police and told them he said no.

17

COLOMB: Correct.

COUNSEL: So on the morning [of the robbery] he didn't want to rob the credit union?

COLOMB: Correct.

Id. at 85-86.  Again, this testimony was not materially different from Colomb's more recent statements to Bartnick.  The difference in the statements is the extent to which Finley, his attorney and the jury were aware of the additional incentives for Colomb's conduct.  In light of the testimony at trial, however, it is not reasonably likely "that disclosure of the evidence would have affected the outcome of the case, or would have put the case in such a different light as to undermine confidence in the outcome."  Rivas, 377 F.3d at 199 (internal citations omitted).  Accordingly, I find that any failure by the government to fully disclose the terms of Colomb's cooperation did not prejudice Finley's case, and recommend that the Court DENY Finley's claim of a Brady violation.

III.  Ineffective Assistance of Counsel

Finley's final claim is that counsel should have investigated Colomb's dealings with the government more thoroughly, and that this failure constituted ineffective

18

assistance of counsel.  "[T]he proper standard for
attorney performance is that of reasonably effective
assistance."  Strickland v. Washington, 466 U.S. 668, 687
(1984).  The essence of an ineffective assistance claim
is that counsel's unprofessional errors so upset the
adversarial balance between defense and prosecution that
the trial was rendered unfair and the verdict rendered
suspect.  See Kimmelman v. Morrison, 477 U.S. 365, 374
(1986).  Thus, a defendant must establish (1) that
counsel made errors so serious that he was deprived of
reasonably competent representation and (2) that
counsel's deficient performance prejudiced the defense.
See Hernandez v. United States, 202 F.3d 486, 488 (2d
Cir. 2000) (citing Strickland, 466 U.S. at 687-691).

     To satisfy the first prong, the petitioner must show
that counsel's representation fell below an objective
standard of reasonableness.  More specifically, the
petitioner must show that "counsel made errors so serious
that counsel was not functioning as the counsel
guaranteed by the Sixth Amendment and the deficient
performance so undermined the proper functioning of the
adversary process that the trial cannot be relied upon as

having produced a just result." <u>Strickland</u>, 466 U.S. at
687; <u>see</u> <u>also</u> <u>United States v. DiTommaso</u>, 817 F.2d 201,
215 (2d Cir. 1987).  In conducting the ineffective
assistance inquiry, a court must maintain a strong
presumption that counsel's conduct falls within the wide
range of reasonable professional assistance.  <u>See</u>
<u>Strickland</u>, 466 U.S. at 689.  The court should recognize
that counsel is strongly presumed to have rendered
adequate assistance and made all significant decisions in
the exercise of reasonable professional judgment.  <u>See</u>
<u>id.</u> at 690.  When evaluating counsel's performance, the
court is to look to "an objective standard of
reasonableness . . . under prevailing professional norms"
and apply this standard in light of all the circumstances
in the case.  <u>Id.</u> at 688, 690.

To satisfy the prejudice prong, the petitioner must
"affirmatively prove prejudice," demonstrating that "but
for counsel's unprofessional errors, the result of the
proceeding might have been different."  <u>Id.</u> at 693-94. If
both of these elements are satisfied, a petitioner can
demonstrate that his counsel's representation "was not
functioning as the 'counsel' guaranteed by the Sixth

Amendment."  Id. at 687.

As discussed above, the evidence at trial showed that Colomb was cooperating with the government, and there were allegations that Special Agent Hersh had inappropriately pressured witnesses.  Therefore, it would have been reasonable to further investigate Hersh's contacts with Colomb prior to trial.  Nonetheless, counsel made extensive efforts to discredit Colomb's testimony, and was certainly well-prepared on this front. Accordingly, the Court should not find that counsel's failure to uncover the extent of Hersh's influence on Colomb rose to the level of ineffectiveness required under Strickland.

In any event, no prejudice was suffered as a result of any alleged failure on counsel's behalf.  As discussed previously, Colomb's recent statements about Finley's hesitation on the day of the burglary were consistent with his testimony at trial.  Furthermore, to the extent that pressure and incentives from the government were factors in Colomb's conduct and his truthfulness at trial, these issues were raised before the jury, albeit with a different set of supporting facts.  Consequently,

21

the Court should find that Finley was not prejudiced by counsel's alleged failure to investigate governmental pressure on Colomb, and Finley's motion for habeas corpus relief based upon ineffective assistance of counsel should be DENIED.

## Conclusion

For the reasons set forth above, I recommend that Finley's motion to vacate, set aside, or correct his sentence (Papers 138 and 148) should be DENIED.  I further recommend that Finley's motions for default judgment (Paper 157) and for summary judgment (Paper 162) be DENIED for lack of merit.

Dated at Burlington, in the District of Vermont, this 21st day of May, 2007.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).